UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LA VAUGHN TAYLOR-HAYWOOD,

    Plaintiff,

  vs.

HENRY FORD HEALTH SYSTEM,

    Defendant.
_____/

Case No. 22-CV-10044

HON. GEORGE CARAM STEEH

ORDER GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT (ECF NO. 12)</u>

    This action was filed by plaintiff La Vaughn Taylor-Haywood (Taylor-Haywood) against her former employer, defendant Henry Ford Health System (HFHS). Taylor-Haywood claims that HFHS violated her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 31.1202 et seq., by discriminating against her and discharging her based on her disability. Taylor-Haywood also alleges retaliation and interference in violation of the Family Medical Leave Act (FMLA), 9 U.S.C. §2611 et seq. Taylor-Haywood filed her Complaint in Wayne County Circuit Court and HFHS timely removed the action to this Court on January 7, 2022. Neither party filed a jury demand. Discovery

closed September 30, 2022. The matter is before the Court on HFHS's motion for summary judgment (ECF No. 12). Upon careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Plaintiff was first employed by defendant as a Secretary II in January 2011. At the time of her discharge in May 2021, plaintiff was employed as a Senior Administrative Secretary. On June 5, 2020, plaintiff broke her ankle and contends that she took FMLA leave due to her injury. Defendant's absence management vendor, New York Life (NYL)[1], found no record of plaintiff having applied for an ADA-based accommodation or FMLA-qualifying leave on or about June 2020, related to an ankle injury or otherwise. Shortly after plaintiff returned to work from her ankle injury, she was assigned a new supervisor, Sue Hart. Plaintiff contends she had to keep her leg elevated and had to ice it during the workday. According to plaintiff, Hart harassed her over the accommodations required due to her ankle injury. Taylor-Haywood Affidavit, ¶ 8, 11, ECF No. 15-3, PageID.648-

---

[1] NYL was a named defendant in this action but was dismissed with prejudice by way of a stipulated order entered between attorneys for Taylor-Haywood and NYL on December 21, 2022 (ECF No. 17, PageID.727).

49. On August 14, 2020, plaintiff contends that she contacted Human Resources to report Hart's behavior. *Id*. at ¶ 12. Plaintiff did not produce any evidence of harassment to corroborating her affidavit, documentary or otherwise.

I.  First FMLA Certification Period: April 2, 2021 - May 3, 2021

On March 16, 2021, plaintiff contacted NYL to request an FMLA-based leave of absence from the workplace relating to depression and anxiety. ECF No. 12-4, PageID.416. On April 6, 2021, plaintiff returned the related medical certification. ECF No. 12-5, PageID.423-24. The certification recommended a single continuous leave of absence for the period from April 2, 2021 through May 3, 2021, and did not recommend any period of intermittent leave (First FMLA Certification Period). Defendant granted the recommended continuous leave as described by plaintiff's medical certification, through May 3, 2021. ECF No. 12-6, PageID.425-26. Plaintiff took her continuous leave during which she was completely absent from the workplace.

II.  Second FMLA Certification Period: May 10, 2021 - November 9, 2021

On May 5, 2021, at the end of plaintiff's FMLA leave, NYL sent plaintiff a letter providing her with a certification form to support a leave extension. ECF No. 12-7, PageID.427-28. On May 13, 2021, plaintiff

returned the medical certification for an extension covering the period of May 10, 2021 through November 9, 2021 (Second FMLA Certification Period). ECF No. 12-8, PageID.429-420. In contrast to the medical certification for the First FMLA Certification Period, which provided for a period of continuous leave, the medical certification for the Second FMLA Certification Period provided only for intermittent leaves. The duration and maximum frequency of the intermittent leave category in the second medical certification was broken into two subcategories by plaintiff's medical provider. Office visits and treatments were covered for a duration of 2 hours per visit and a frequency of 2 times a month. Relevant to this case, incapacity leave was covered for a duration of 8 hours per day, up to 2 days per episode with a frequency of 2 times a month. Defendant approved plaintiff's leave request on May 17, 2021. ECF No. 12-9, PageID.431-32.

III.   FMLA Leave

Plaintiff returned to work on May 10, 2021 to find that her office had been cleaned out. This discovery triggered plaintiff's anxiety, although she stayed at work for the rest of the day. ECF No. 15-3, PageID.649. On May 12, 2021, plaintiff notified her immediate supervisor, Hart, via text that she was "reporting to you intermittent FMLA time for today, a total of 8 hours."

ECF No. 12-10, PageID.433. Plaintiff returned to work the next day, May 13, 2021. Plaintiff became anxious that Ms. Hart was harassing her when Hart told plaintiff they needed to have a meeting but did not give plaintiff further details. Plaintiff told Hart she could not handle this treatment was going back on leave. Hart allegedly responded that "she knew that was going to happen, and that's why you took FMLA." Plaintiff alleges that she told Hart she was going back on leave from May 17, 2021 through May 19, 2021, and she would let Hart know about May 14, 2021. Taylor-Haywood Affidavit, ¶ 24, ECF No. 15-3, PageID.650. Plaintiff left work early on May 13 due to having a severe anxiety attack. Complaint ¶ 38, ECF No. 1-2, PageID.12.

On May 14, 2021, plaintiff contacted Hart via text to report that "I am requesting intermittent fmla [sic] for today." ECF No. 12-10, PageID.435. On Monday May 17, 2021 through Wednesday May 19, 2021, plaintiff did not report for work. The parties dispute whether plaintiff notified Hart of her intent to take FMLA leave on those dates. Plaintiff contends she told Hart of her intention to "go back on leave" when she was last at work on May 13. Taylor-Haywood Affidavit, ¶ 24, ECF No. 15-3, PageID.650. Hart maintains that plaintiff did not directly notify her of those absences or that she was

taking FMLA leaves on those dates. Hart Affidavit, ¶ 4, ECF No. 12-11, PageID.437.

IV. <u>Termination of Employment</u>

On Thursday, May 20, 2021, defendant sent plaintiff a letter notifying her that she was deemed to have voluntarily resigned her position because she violated defendant's "No Call / No Show" policy for her absences on May 17-19, 2021. ECF No. 12-12, PageID.438. The "No Call / No Show" policy requires that all employees notify their immediate supervisor as soon as it is known that an employee will be unable to attend all or part of their workday. Notification of a person other than the immediate supervisor or his or her designee is insufficient notice for purposes of the policy. Three consecutive absences without notice shall constitute the employee's voluntary resignation from HFHS. ECF No. 12-13, PageID.439-40.

On or about August 19, 2021, plaintiff filed a charge of discrimination with the EEOC alleging ADA violations. ECF No. 12-14, PageID.442-43. On or about August 24, 2021 plaintiff received a right-to-sue letter from the EEOC. ECF No. 12-15, PageID.444.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Tolan v.* Cotton, 572 U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

## ANALYSIS

I. <u>ADA and PWDCRA Claims</u>

    A. <u>Discrimination and Failure to Accommodate</u>

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." *Keith v. Cnty. of Oakland*, 703

F.3d 918, 923 (6th Cir. 2013) (quoting 42 U.S.C. §12112(a)). The PWDCRA "substantially mirrors the ADA." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). Therefore, the resolution of plaintiff's ADA claim will generally resolve the PWDCRA claim. *Id*. at 763; *Peden v. City of Detroit*, 470 Mich. 195, 207 (2004).

To recover for a claim of discrimination under the ADA, plaintiff must show that she (1) is disabled, (2) she is otherwise qualified to perform the essential functions of the job with or without an accommodation, and (3) she suffered an adverse employment action because of her disability. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). Such claims may be substantiated in two ways: either through direct evidence that the employer relied on the plaintiff's disability in making an adverse employment decision, or by indirect evidence of discrimination. *See id*.; *see also Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

Allegations of failure to reasonably accommodate a disability "necessarily involve direct evidence" of discrimination. *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). In those instances of direct evidence, the common burden shifting arrangement is disposed with and plaintiffs bear the burden of proof similar to their original discrimination burden described in *Ferrari*, 826 F.3d at 891: plaintiff must establish (1) that

- 9 -

she is disabled, (2) that she is otherwise qualified for the position despite her disability either (a) without an accommodation, (b) with an alleged essential job function eliminated, or (c) with a proposed reasonable accommodation. *See Kleiber*, 845 F.3d at 869.

Once plaintiff establishes a prima facie case, defendant bears the burden of proving that a proposed accommodation will impose an undue hardship upon the employer. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). Under the direct framework, plaintiff need not prove they suffered an adverse employment action separate from the failure of the employer to reasonably accommodate the employee. *Kleiber*, 485 F.3d at 868-69 ("failing to make a reasonable accommodation falls within the ADA's definition of 'discrimination,'" which means "an employer's failure to offer a reasonable accommodation necessarily" involves an adverse action).

In this case, plaintiff bases her disability claims on her diagnosis of depression and anxiety. See, ECF No. 15, PageID.614, 619. There is no dispute that plaintiff has met the first prong of her prima facie case of disability discrimination and failure to accommodate. An essential element of the second prong of plaintiff's prima facie case is that she requested or proposed an accommodation. *See Monette*, 90 F.3d at 1183 (noting that

"the disabled individual bears the initial burden of proposing an accommodation . . . ."); *Burns v. Coca-Cola Enters., Inc.*, 222 F.3d 247, 258 (6th Cir. 2000) (noting, in affirming a grant of summary judgment, that a plaintiff's "failure to request [accommodation] precludes him from recovering for discrimination under the ADA. In order to establish a prima facie case of disability discrimination under the [ADA, Plaintiff] must show that he requested, and was denied, [an accommodation]."); *Lockard v. GM Corp.*, 52 Fed.Appx. 782, 786 (6th Cir. 2002) (favorably citing *Monette* and *Burns*, and affirming a grant of summary judgment because plaintiff therein "failed to present evidence that she requested an accommodation.").

In her response brief, plaintiff identifies her proposed accommodation for her disability as being her request for FMLA leave. But plaintiff never characterized her request for leave as an ADA/PWDCRA-based accommodation at the time she made the request. All of plaintiff's leave of absence requests were expressly based on FMLA. A request and denial of an accommodation is an essential element for an ADA claim that must preexist the claim. *See Burns*, 222 F.3d at 258; *Monette*, 90 F.3d at 1183. The Court finds that plaintiff has failed to make a prima facie case of discrimination or failure to accommodate under the ADA and PWDCRA.

- 11 -

B.  Retaliation

To establish a claim of retaliation, a plaintiff must demonstrate that (1) she engaged in a protected activity, (2) defendant knew of the protected activity, (3) a materially adverse employment action thereafter occurred, and (3) a causal connection between the protected activity and the materially adverse employment action. *See Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 469 (6th Cir. 1999); *Penny v. United Parcel Service*, 128 F.3d 408, 417 (6th Cir. 1997).

Plaintiff identifies her protected activity as her 2021 requests for FMLA leave. However, as with her accommodation claims, plaintiff has produced no direct evidence to establish that she engaged in an ADA or PWDCRA-based activity, let alone that she was retaliated against for doing so. Plaintiff has thus failed to establish an essential element of her prima facie case for retaliation.

Summary judgment on plaintiff's accommodation and retaliation claims under the ADA and PWDCRA will be granted in favor of defendant.

II.  FMLA Claims

Plaintiff makes two claims under FMLA. The first claim is that defendant interfered with her FMLA leave by "calling her and bothering her

when she was on FMLA leave." The second claim is for retaliation because she was terminated for using her FMLA leave.

### A. Interference

To establish a claim for interference under FMLA, a plaintiff must demonstrate that (1) she was an eligible employee, (2) defendant was an employer as defined under the FMLA, (3) plaintiff was entitled to leave under the FMLA, (4) plaintiff gave defendant notice of her intention to take leave, and (5) defendant denied plaintiff FMLA benefits to which she was entitled. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016). In this case, plaintiff alleges defendant interfered with her FMLA leave by calling her at home and harassing her. *See Tilley v. Kalamazoo Cty. Rd. Comm'n*, 654 Fed.Appx. 675, 680 (6th Cir. 2016) (citing *Sabourin v. Univ. of Utah*, 676 F.3d 950, 961 (10th Cir. 2012)) (it is impermissible to demand that an employee continue working during approved FMLA leave).

First, plaintiff has presented no details regarding, and no evidence to corroborate, her allegation in the Complaint that she received calls from defendant improperly interfering with any leave she took between April 2, 2021 and her termination on May 20, 2021.

Second, Plaintiff requested, and was granted, an extension of her intermittent FMLA-based leave to encompass the period from May 10,

2021 through November 9, 2021. The period of her absences on May 17-19, 2021 fell within the period of that leave extension. However, the approved purposes, durations, and frequency of the approved intermittent leave was not unlimited. Plaintiff does not allege that she had doctor appointments on May 17, 18 or 19, 2021, so her absences on those dates fell into the "incapacity" category of her medical certification, which was limited to "up to 2 days per episode" and a "maximum frequency of 2 times per month." In the month of May 2021, plaintiff took her first FMLA-based intermittent leave related to incapacity on May 12, 2021. Plaintiff reported for work the next day (May 13, 2021), signifying that this first episode of anxiety-related incapacity" had ended. Plaintiff indicates in her Complaint that "she had a severe anxiety attack, and took the remainder of May 13, 2021 off". This begins the second episode of incapacity. On May 14, 2021, plaintiff gave notice of another FMLA-based intermittent leave related to incapacity. ECF No. 12-10, PageID.435 (Text message from plaintiff to Sue Hart, "Good morning Sue, I requested intermittent fmla for today."). This would be the second day of her second episode. Thus, as of May 14, 2021, plaintiff had utilized the entirety of the approved FMLA-based intermitted leaves available to her pursuant to the scope of the Second FMLA

Certification Period. Defendant approved plaintiff's leave requests and did not deny or interfere with her absences on May 12, 13 or 14, 2021.

After May 14, 2021, plaintiff did not have any remaining FMLA based leave available. Therefore, she was not entitled to take FMLA leave on May 17-19, 2021 and defendant did not deny her a right to leave to which she was entitled. Plaintiff has failed to make out her prima facie case of FMLA interference.

B.   Retaliation

To establish a prima facie case of FMLA retaliation, plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) her employer had knowledge of this protected activity; (3) she suffered an adverse employment action; and (4) there was a causal link between the exercise of her rights under the FMLA and the adverse employment action. *Edgar v JAC Products, Inc.*, 443 F.3d 501, 507-508 (6th Cir. 2006). Plaintiff cannot satisfy the first prong of her prima facie case where she had exhausted her available FMLA leave for the month prior to May 17, 2021.

Not only had plaintiff used all of her intermittent FMLA leave for the month of May, but the period of May 17-19, 2021 is distinguishable from earlier leaves for another reason. The 3-day period of May 17-19, 2021 fell within plaintiff's Second FMLA Certification Period, which was limited in its

purpose, duration and frequency for intermittent leave associated with plaintiff's anxiety condition. The medical certification for plaintiff's intermittent leave request covered "episodic flare ups" of anxiety requiring short periods of intermittent leave for "incapacity" caused by the flare ups. As explained above, on May 12, 13 and 14, plaintiff experienced episodic flare ups of her anxiety and thereafter sought an associated FMLA-based leave by putting in a request with defendant. In contrast to asking for leave *after* experiencing a flare up of her anxiety, plaintiff asserts that on May 13 she anticipated a future flare up beginning on May 17 and lasting until May 19. Taylor-Haywood Affidavit, ¶ 28, ECF No. 15-3, PageID.651. Even if plaintiff had not used up her allotment of intermittent FMLA leave for the month, the May 17-19, 2021 absences either do not qualify under the conditions of the Second FMLA Certification Period (because they were not due to episodic flare ups), or plaintiff did not provide proper notice to defendant (because notice cannot be given prior to a flare up occurring). For this additional reason, plaintiff does not satisfy the first prong of her prima facie case of retaliation.

Summary judgment will be granted in favor of defendant on plaintiff's FMLA interference and retaliation claims.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (ECF No. 12) is GRANTED and plaintiff's Complaint is dismissed in its entirety.

Dated: February 28, 2023

> s/George Caram Steeh
> GEORGE CARAM STEEH
> UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on February 28, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk